IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAMONT WILLIAMS | : | No. 08-704-09 |
| | : | |

MEMORANDUM

PRATTER, J.                                                           SEPTEMBER 14, 2020

Lamont Williams seeks immediate release from incarceration by moving for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The primary basis for the motion is the First Step Act of 2018. The Government disputes the merits of the motion. For the reasons that follow, the Court denies the motion.

BACKGROUND

I.      **Mr. Williams' Criminal Conduct**

Mr. Williams was convicted for his participation in large drug trafficking operation in West Philadelphia that began in 2006. Law enforcement personnel extensively surveilled the surrounding areas, wiretapped suspects' phones, and dispatched undercover agents to make controlled drug buys. Two years later, law enforcement agencies executed search warrants on 34 residences and vehicles, including Mr. Williams' apartment. When police searched his apartment, they also recovered a handgun. Mr. Williams, along with other suspected members of the drug-distribution operation, was charged under 21 U.S.C. § 846 with conspiracy to distribute five kilograms or more of cocaine.

1

Mr. Williams went to trial before a jury during which the Government presented testimony of cooperating co-defendants. Cooperating witnesses—including Maurice Hudson, the initial target of the investigation—testified to the nature and extent of the drug distribution ring. Mr. Hudson also testified about his interactions with Mr. Williams. The Government introduced telephone records, wiretap recordings, and testimony from officers involved in the investigation. Mr. Williams was convicted on all counts.

At the time, the mandatory minimum sentence of incarceration for conspiracy to distribute more than five kilograms of cocaine was 120 months. 21 U.S.C. 841(b)(1)(A). Because Mr. Williams also had a prior conviction for a felony drug offense, the sentence was doubled to 240 months. He was sentenced in February 2011 and is currently incarcerated. Pending continued good behavior, his estimated release date is January 4, 2027. The Third Circuit Court of Appeals affirmed Mr. Williams' conviction and sentence. *United States v. Williams*, 504 F. App'x 207 (3d Cir. 2012).

Mr. Williams moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Mr. Williams asks for release based on his efforts at rehabilitation while incarcerated, including his enrollment in various educational programs offered in prison and his faith and status as a religious leader and role model. In support of his motion, Mr. Williams also references Section 401 of the First Step Act which lowered certain drug mandatory minimum sentences.

## Legal Standard

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). A defendant can move to reduce his or her term of imprisonment under 18 U.S.C.

2

§ 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf, which can only occur after the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In the event the moving defendant complies with the exhaustion requirement,[1] a court may reduce the term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with the Sentencing Commission's applicable policy statements[2] but only after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable.

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides some guidance for defining the term. The application note provides, in pertinent part, that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the

---

[1] Mr. Williams's request to the warden went unanswered for the requisite 30-day period. Mr. Williams brings this motion on his own behalf. The Government does not raise an exhaustion argument here.

[2] Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," the Court recently concluded that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, No. 03-271, ___ F. Supp. 3d ___, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at *4.

defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899) (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)).

## DISCUSSION

Mr. Williams advances two arguments in his motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

First, Mr. Williams contends that the jury should have only considered the cocaine passed between him and Mr. Hudson, the head of the drug ring, not the amount distributed by the entire conspiracy. Mr. Williams asserts that this failure to do so constitutes an *Alleyne* error and warrants a reduction of his sentence. *Alleyne* requires that any fact that increases a statutory mandatory minimum sentence must be submitted to the jury and found beyond a reasonable doubt. 570 U.S. 99 (2013).

Mr. Williams is incorrect in this argument. Because he was charged with and convicted of conspiracy, "the jury was not bound to only consider the cocaine that actually passed between defendants and [Mr.] Hudson." *United States v. Williams*, 504 F. App'x 207, 211 (3d Cir. 2012). Rather, the operative facts warranting his 20-year mandatory minimum sentence was the "amount of cocaine distributed by the conspiracy as a whole and not the amount of cocaine attributable to defendants personally." *Id.* This fact was included in the charging instructions and submitted to the jury. *Id.* at 208-09. The Third Circuit, in upholding the sentence, concluded there was "ample

evidence" for the jury to find Mr. Williams conspired to distribute at least five kilograms of cocaine. *Id.* at 211-12. Thus, contrary to Mr. Williams' assertion, his sentence does not violate the Supreme Court's holding in *Alleyne v. United States*.

Second, Mr. Williams asserts that he meets the "extraordinary and compelling circumstances" warranting his release based on his post-sentence rehabilitation and the recent sentencing reforms in the First Step Act. The Court cannot agree.

As an initial matter, Section 401 of the First Step Act is not applicable here. Among its reforms, the First Step Act reduced the mandatory minimum sentence for violations of 21 USC 841(b)(1)(A) to 15 years from 20. Congress did not, however, make the changes to the drug mandatory minimum penalties under Section 401 of the Act retroactive. Indeed, Congress was unequivocal in its intent that Section 401's amendments do not apply to defendants who were sentenced prior to the Act's enactment. *See* First Step Act § 401(c) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for that offense has not been imposed as of such date of enactment.")." Because Mr. Williams was sentenced on February 1, 2011—more than seven years prior to enactment of the First Step Act—the Act does not apply here. *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020); *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *2 (E.D. Pa. July 24, 2020).

Mr. Williams also bases his motion on his efforts at rehabilitation while incarcerated. As noted above, although Congress has never defined "extraordinary and compelling" reasons, it has explicitly stated that "rehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Mr. Williams does not claim a medical ailment, that he is of advanced age, or family

5

circumstances—grounds upon which releases tend to be granted.[3] Instead, he draws the Court's attention to the educational classes he has taken and describes himself as a religious leader and role model in the prison. Mr. Williams submitted copies of his program review detailing the classes in which he has enrolled. The Court absolutely commends Mr. Williams' efforts. However, Congress has foreclosed rehabilitation without more as a basis for release. 28 U.S.C.A. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *10 (E.D. Pa. Apr. 1, 2020). This result holds regardless of whether this Court adopts the Government's argument that the policy statement remains unaffected by the First Step Act or whether the Court adopts *Rodriguez's* reasoning that courts may independently assess whether a situation warrants compassionate release. Rehabilitation may be considered with other factors, such as health problems—but Mr. Williams points to none.

To the extent that courts have granted relief based on rehabilitation, those cases are distinguishable from Mr. Williams' situation. Notably, defendants who have secured release earned considerably long sentences for multiple convictions or violated 18 U.S.C. § 924(c), which resulted in stacked sentences. *See, e.g.*, *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *3 (E.D. Pa. July 24, 2020) (granting relief based on "rehabilitation and the stacked sentence" of 213 years but noting that "rehabilitation alone does not qualify him for a reduced sentence as a matter of law"). Even the case Mr. Williams relies on, *United States v. Marks*, explicitly states that rehabilitation alone is not enough. *United States v. Marks*, No. 03-CR-6033L,

---

[3] Medical conditions, age of defendant and family circumstances are listed in the Sentencing Commission's policy statement in Section 1b1.13 (A)-(C). The court refers to the policy statement for guidance but is not bound by it as the "Sentencing Commission simply has not issued a policy statement that addresses prisoner-filed motions post-First Step Act." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020). The policy statement also includes a catch-all provision which provides that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the three enumerated reasons. *See* U.S.S.G. § 1B1.13.cmt. n.1(D).

2020 WL 1908911 (W.D.N.Y. Apr. 20, 2020). And, Mr. Marks, unlike Mr. Williams, was originally sentenced under the Section 924(c) stacking provision.

The remedy that Mr. Williams seeks is reserved for circumstances peculiar to an individual—his health, his age—and is not designed to challenge the guidelines themselves. The latter would exhume the parole system which Congress specifically abolished. *See United States v. Terrence Gibbs*, No. 96-539-02, at *6-7 (Mar. 5, 2020) (denying release where based on rehabilitation alone). And it would undermine the very function of the federal sentencing regime: to provide certainty and consistency across sentences. *See Dillon v. United States*, 560 U.S. 817, 824 (2010). The First Step Act's reforms opened the door further to allow defendants to seek compassionate release; defendants must still clear the threshold.

Because the Court cannot grant the relief Mr. Williams seeks, the Court declines to consider the 3553(a) factors here.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Williams' motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE