## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| LAMONT WILLIAMS | : | No. 08-704-09 |
| | : | |

## MEMORANDUM

PRATTER, J.                                        JUNE *27*, 2023

For a second time, Lamont Williams seeks a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). But none of the reasons he asserts in his counseled motion are "extraordinary and compelling," and so they do not warrant early release from his present home confinement. Therefore, the Court denies his motion.

### BACKGROUND

Mr. Williams participated in a large drug trafficking operation. At trial, Mr. Williams was convicted of conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841, and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Because Mr. Williams had a previous federal conviction for drug distribution relating to conduct in 1996, the Court sentenced him to the then-applicable mandatory minimum term of 240 months of imprisonment, ten years of supervised release, a $2,000 fine, and a $200 special assessment.

Mr. Williams previously sought a reduction in sentence in 2019, arguing that non-retroactive changes in federal sentencing law would have resulted in a substantially shorter sentence for him had he been convicted at a different time and that he had an excellent rehabilitative record. The Court denied Mr. Williams's motion, finding no "extraordinary and compelling" circumstances had been presented.

1

In July 2020, after Mr. Williams had served approximately half of his sentence, the Bureau of Prisons, acting under the authority of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, § 12003(b)(2), 134 Stat. 516 (2020), transferred Mr. Williams to home confinement. Since that time, Mr. Williams has been living in his parents' home and working in the community under the supervision of the Residential Reentry Management Philadelphia field office and its re-entry services contractor, Kintock Center. Mr. Williams has an anticipated release date of January 4, 2026. At the time he filed the instant motion, Mr. Williams had served approximately 155 months and had credit for good conduct time of approximately 20 months, meaning he had served approximately 175 months out of his 240-month sentence.

In this motion, Mr. Williams suggests three grounds as "extraordinary and compelling" reasons for his release. The Government has filed a response in opposition to the motion.

## LEGAL STANDARD

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within a prison before applying to a court.[1] 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." *Id.*

---

[1] If the Director of the Bureau of Prisons declines a prisoner's request to move for a sentence reduction, a defendant may himself move for a reduction in sentence after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Third Circuit Court of Appeals has demanded "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Mr. Williams argues that he is not under the supervision of a warden while in home confinement, and thus not subject to the statute's exhaustion requirement. However, out of an abundance of caution, Mr. Williams's counsel wrote to the case manager of his halfway house, requesting a recommendation be made to the Director of the Bureau of Prisons that Mr. Williams's term of imprisonment be reduced. Because Mr. Williams then waited over thirty days before filing the instant motion, and the Government raises no argument as to how this precaution would not fulfill the exhaustion requirement, the Court finds that Mr. Williams has properly exhausted his administrative remedies under the circumstances.

2

§ 3582(c)(1)(A)(i). While § 3582 does not itself define "extraordinary and compelling reasons," to count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To constitute a compelling need, the need must be "so great that irreparable harm or injustice would result if it is not met." *Compelling need, id.*. Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[2] Once the prisoner has shown an extraordinary and compelling reason to warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

DISCUSSION

I.   **Mr. Williams Has Not Presented Any Extraordinary and Compelling Reason for His Release**

In his motion, Mr. Williams presents three grounds as "extraordinary and compelling" reasons for his release: (1) his kidney disease; (2) his rehabilitation; and (3) the "overlong" period of home confinement resulting from his transfer from prison pursuant to the CARES Act.

The Court finds that none of Mr. Williams's asserted grounds are "extraordinary and compelling" reasons to reduce his sentence. And, even if the Court were to find that Mr. Williams adequately asserted extraordinary and compelling reasons, the sentencing factors counsel against his early release.

---

[2] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

### A. **Mr. Williams's Medical Condition Is Not an Extraordinary and Compelling Reason for His Release**

Mr. Williams, who is 49 years old, asserts that his stage 3 chronic kidney disease is an extraordinary and compelling reason for compassionate release.

To demonstrate an "extraordinary and compelling" health reason sufficient to qualify for compassionate release, a prisoner generally should show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility *and* from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii) (emphasis added).

Mr. Williams, however, does not show that his kidney disease significantly diminishes his ability to care for himself, particularly while he is on home confinement—indeed, quite the opposite. Mr. Williams admits in his motion that his records show his kidney disease has been "in remission" since 2019. Def.'s Second Mot. for Reduction in Sentence at 8 n.4. He sees a nephrologist regularly since his time in home confinement, and notes that his "condition does not appear to have deteriorated markedly during his imprisonment." *Id.* at 9 n.5. And his kidney disease does not appear to interfere with his present employment as a property manager, which necessitates strenuous activities including "doing construction, maintenance, and repairs of all kinds." *Id.* ¶ 15(b)(ii); *cf. United States v. Reaves*, No. 91-cr-570-09, 2023 WL 2795349, at *3 (E.D. Pa. Apr. 5, 2023) (finding that defendant's combined medical conditions, which included "thyroid dysfunction; enlarged prostate; ulcerative colitis; schizophrenia, polythetic right eye and left eye blindness; and Crohn's disease" qualified as "extraordinary and compelling" reasons, particularly because the defendant required other inmates to assist him in bathing and dressing).

Mr. Williams notes that his medical condition elevates his risk factor for adverse outcomes from a COVID-19 infection. It is true that chronic kidney disease may increase the likelihood of

4

acute sickness after contracting COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 23, 2023). However, Mr. Williams does not disclose the extent to which he has been vaccinated against COVID-19, and COVID-19 vaccines, particularly up-to-date bivalent boosters, have been reported as safe and effective in protecting against severe medical outcomes caused by COVID-19 and identified variants. *See, e.g., COVID-19 Vaccine Effectiveness Update*, Ctrs. for Disease Control & Prevention (Mar. 23, 2023), https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (last visited June 23, 2023). The widespread availability of COVID-19 vaccines virtually eliminates any related risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). Moreover, Mr. Williams does not assert any facts that would suggest a reduced risk of contracting COVID-19 as a result of an abbreviated sentence when compared with the COVID-19 risks associated with continued home confinement. *See, e.g., United States v. Somerville*, 463 F. Supp. 3d 585, 596–97 (W.D. Pa. 2020) ("[A] prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an *actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.*") (emphasis added).

Because Mr. Williams's medical condition appears well-managed and does not interfere with his daily life, the Court concludes that it does not provide a basis for the reduction of his sentence.

**B. Mr. Williams's Rehabilitation Is Not an Extraordinary and Compelling Reason for a Reduction in Sentence**

Mr. Williams argues that his early transfer to home confinement has allowed him to demonstrate his "exceptional rehabilitation" to the Court. Def.'s Second Mot. for Reduction of Sentence ¶ 15(b). In support of this argument, he cites to the financial and medical support he gives to his parents, with whom he currently lives. He also notes the favorable reviews he receives from his employer for his work as a property manager and his aspiration to owning his own trucking company. Further, Mr. Williams has passed his drug screenings consistently since he was transferred to home confinement, and he has submitted letters from his case managers indicating that Mr. Williams has behaved in exemplary fashion while under their supervision. Finally, Mr. Williams notes that under his Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") assessment, a tool used by the Bureau of Prisons to measure an inmate's rehabilitation, he was assessed as at minimal risk for recidivism.

As the Court previously noted in denying Mr. Williams's first motion for a reduction in sentence, Congress has explicitly stated that "rehabilitation of the defendant alone" is not a sufficient extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t). And as discussed above, Mr. Williams's medical condition is not so severe as to constitute an extraordinary and compelling reason, nor does he claim that his age is so advanced, or his family circumstances so difficult, as to warrant release.[3] So, this Court will not grant Mr. Williams's motion on the grounds of his rehabilitation.

---

[3] The Guidelines state that a defendant aged 65 or older who is experiencing a serious deterioration in health because of his age could present an extraordinary and compelling reason for release, as could a defendant who claims that his spouse or registered partner is incapacitated or that the caregiver of his minor children has died is incapacitated. U.S.S.G. § 1B1.13 app. n.1(B)–(C). Mr. Williams presents no analogous facts that would warrant the Court's invocation of these application notes in the Guidelines.

**C. Mr. William's Time Already Spent in Home Confinement Is Not an Extraordinary and Compelling Reason for His Release**

Third, Mr. Williams argues he has served an "overlong" portion of his sentence in home confinement. With his projected release date of January, 2026, he has about 30 months remaining of his 20-year sentence. But the fact that Mr. Williams has been permitted to serve the final five years of his sentence on home confinement is not independently an "extraordinary and compelling" reason to grant compassionate release.

Mr. Williams cites to several cases outside of the Third Circuit in which defendants in home confinement received a reduction in sentence, but those cases are distinguishable because each of the defendants established an extraordinary or compelling reason for relief due to presently life-altering or life-endangering medical conditions, advanced age, or status as the only reasonably available caregiver for a seriously ailing close relative. *Cf. United States v. Busby*, 534 F. Supp. 3d 661, 662–63 (N.D. Tex. 2021) (granting motion for compassionate release of defendant in home confinement on the basis of the defendant's diagnosis with Chronic Lymphocytic Leukemia, his more advanced age of 68, *and* his "unique circumstances"); *United States v. Gamboa*, 467 F. Supp. 3d 1092, 1100 (D.N.M. 2020) (finding that reduction in sentence for defendant in home confinement was warranted because of his Crohn's disease, which rendered him incapable of self-care, caused him to spend 90 percent of the day in bed, and precluded his ability to sit or move without a walker); *United States v. Hebel*, No. 11-cr-20320-1, 2021 WL 6072303, at *3 (E.D. Mich. Dec. 23, 2021) (granting a reduction in sentence to defendant in home confinement after finding that she was the only reasonably available caregiver for her mother who suffered from Alzheimer's, together with her "excellent rehabilitation" and the fact that she had served a significant percentage of her sentence); *United States v. Parke*, No. 08-cr-24, 2021 WL 4485332, at *1 (D. Mont. Sept. 30, 2021) (determining that compassionate release was appropriate for

defendant in home confinement in light of his obesity, hypertension, and heart valve transplant, and his difficulties obtaining medical care while incarcerated, which "diminished his ability to function in prison"); *United States v. Donnes*, No. 16-cr-12, 2021 WL 4290679, at *1 (D. Mont. Sept. 21, 2021) (considering defendant's cirrhosis, hepatic encephalopathy, hepatitis C, hypertension, hyperlipidemia, congestive heart failure, spinal stenosis, diabetes, neuropathy, retinopathy, and hepatocellular carcinoma, and administrative failures relating to the defendant's maintenance of related prescriptions, which had caused him to go for weeks at a time without necessary medication while in home confinement, before determining that extraordinary and compelling circumstances existed to reduce sentence).

Here, the mere fact that Mr. Williams has now spent about three years of his 20-year sentence at home—in stable health, with regular access to a nephrologist, and assisting his mother in giving care to his father, by Mr. Williams's own admission—does not persuade the Court that a reduction in sentence is appropriate.

Thus, even considering Mr. Williams's asserted reasons for a reduction in sentence in combination, the Court finds no extraordinary and compelling circumstances exist to justify granting Mr. Williams's requested relief.

## II.   The Sentencing Factors Counsel Against Mr. Williams's Release

Even if Mr. Williams had demonstrated an extraordinary and compelling reason for his early release, which he has not, the sentencing factors counsel against granting Mr. Williams the release requested. Mr. Williams's then–mandatory minimum sentence of 240 months reflects the seriousness of his offense. 18 US.C. §§ 3553(a)(1), (2)(A). Mr. Williams participated in a conspiracy to distribute kilogram-quantities of cocaine, and he unlawfully possessed a handgun. At the time he committed the acts underlying his present imprisonment, he had previously been convicted for distributing kilograms of cocaine and had earned a 63-month sentence based on that

8

conduct. Thus, his substantial sentence was meant to protect the public from further such conduct that might endanger others and the community as a whole, although the Bureau of Prisons' transfer of Mr. Williams to home confinement reflects an apparent assessment that Mr. Williams is unlikely to commit such offenses again. 18 U.S.C. § 3553(a)(2)(C). However, Mr. Williams's imprisonment affords general deterrence against committing future similar drug-related violations. *Id.* § 3553(a)(2)(B).

The Government points to no blemishes on Mr. Williams's record since his transfer to home confinement or, indeed, any disciplinary infractions since Mr. Williams was arrested in 2009. Mr. Williams also notes that he has the support of his current employer and his case managers, contributes substantially to his parents' household, and has attained a General Educational Development (GED) certificate while in custody. While the Court commends Mr. Williams's continued personal and educational growth during his time in custody and in home confinement, that is not a reason in and of itself to grant the motion for reduction in sentence.[4]

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Williams's motions for a reduction in sentence. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] Mr. Williams also requests that his term of supervised release be reduced from ten years—the mandatory minimum term at the time of Mr. Williams's sentencing— to three years, which is two years less than the current mandatory minimum. Because Mr. Williams's primary request for a reduction in sentence is denied, the Court declines to grant his secondary request as to the reduction in the term of his supervised release at this juncture. The Court will, of course, consider such a request after Mr. Williams has spent at least one year in supervised release if he properly brings a motion under 18 U.S.C. § 3583(e).

9